UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-22119-CIV-ALTONAGA/Simonton

**LAW OFFICES LA LEY**
**CON JOHN H. RUIZ, P.A.**, *et al.*,

    Plaintiffs,

vs.

**RUST CONSULTING, INC.**, *et al.*,

    Defendants.
_____/

### ORDER

**THIS CAUSE** came before the Court upon Defendants, Office of the Comptroller of the Currency (the "OCC") and Board of Governors of the Federal Reserve System's (the "Board['s]") (collectively, the "Federal Defendants[']") Motion to Vacate . . . ("Motion") [ECF No. 11], filed June 25, 2013.[1]  The Court has carefully considered the parties' numerous written submissions, the record, and applicable law.

### I. BACKGROUND

In this action Plaintiffs, the Law Offices La Ley con John H. Ruiz and John H. Ruiz (collectively, "Plaintiffs") seek to obtain attorneys' fees from a settlement fund established by the Federal Defendants and certain mortgage servicers.  (*See generally* Verified Emergency Petition for Temporary Injunction without Notice and for Declaratory Judgment ("Complaint") [ECF No. 1-2]).  By way of background, the Federal Defendants, pursuant to 12 U.S.C. section

---

[1] Defendant, Rust Consulting, Inc. ("Rust"), joined and adopted the Federal Defendants' Motion.  (*See* [ECF Nos. 33 & 34]).

1818(b),[2] issued administrative cease and desist orders ("Consent Orders") to certain mortgage lenders as a result of deficiencies in loan servicing and foreclosure practices. (*See* Mot. 3, 7;[3] *see also*, Consent Order between OCC and Bank of America, N.A. ("BOA Consent Order"), Mot. Ex. 1 [ECF No. 11-1]; Consent Order between Federal Reserve Board and SunTrust Banks, Inc., SunTrust Bank, and SunTrust Mortgage, Inc. ("SunTrust Consent Order"), Mot. Ex. 2 [ECF No. 11-2]). The Consent Orders required the mortgage servicers to take a number of actions, including requiring the mortgage servicers to improve their practices, and create a procedure by which the servicers would review their foreclosure actions to determine whether they complied with federal and state law. (*See* Mot. 2–4, 6; Compl. 3–4). The Consent Orders also created a system by which certain eligible borrowers ("Eligible Borrowers") who believed they had been financially harmed could request an independent review of their files to be considered for remediation. (*See id.*). These processes for review became known as the Independent Foreclosure Review ("IFR"). (*See* Mot. 7–8; Compl. 3). Rust, as the payment agent, disbursed monies under the IFR. (*See* Compl. 7).

Then, in early 2013, the Federal Defendants and several mortgage servicers agreed to a settlement in which the Consent Orders were amended (the "Amendments"), replacing the IFR process with a streamlined process. (*See* Mot. 8–9; Amendment to [the] April 13, 2011 Consent Order between OCC and Bank of America, N.A. ("BOA Amendment"), Mot. Ex. 3 [ECF No. 11-3]; Amendment of Consent Order between Federal Reserve Board and SunTrust Banks, Inc., SunTrust Bank, and SunTrust Mortgage, Inc. ("SunTrust Amendment"), Mot. Ex. 4 [ECF No.

---

[2] This statute "gives the OCC the authority to address by consent orders 'unsafe or unsound' practices or violations of law by financial institutions." *In re JPMorgan Chase Mortg. Modification Litig.*, 880 F. Supp. 2d 220, 244 (D. Mass. 2012) (quoting 12 U.S.C. §§ 1818(b), 1813(q)).

[3] Where the pagination within the text of the Motion differs from the pagination assigned by the CM/ECF System, the Court utilizes that assigned by the CM/ECF System.

CASE NO. 13-22119-CIV-ALTONAGA/Simonton

11-4]). The Amendments required the mortgage servicers to place over $3 billion in cash payments into a Qualified Settlement Fund (the "QSF"). (*See* Mot. 8). Under the Amendments, all Eligible Borrowers are entitled to receive compensation regardless of whether they filed a request for review or suffered any financial injury. (*See id.* 4). Funds from the QSF are disbursed by Rust to Eligible Borrowers in accordance with the Amendments. (*See id.* 5).

Plaintiffs assisted many clients in "timely fil[ing] IFR claims," and purportedly "managed to double the amount of [the clients'] awards entitled under the IFR." (Compl. ¶ 25). As a result of their representation of clients, Plaintiffs submitted a charging lien asserting Plaintiffs' right to attorneys' fees from the settlement fund. (*See id.* ¶¶ 13–20). In effect, Plaintiffs intended to use the charging liens as a means to receive payment of their attorneys' fees directly from the QSF instead of the monies being sent to Plaintiffs' clients, with Plaintiffs thereafter seeking reimbursement of their fees from those clients. After certain disbursements were made without first satisfying Plaintiffs' charging lien (*see id.* ¶ 27), Plaintiffs brought this action in state court seeking injunctive and declaratory relief (*see generally id.*). In particular, Plaintiffs sought to prohibit the Federal Defendants and Rust (collectively, "Defendants") from disbursing funds to Plaintiffs' clients instead of disbursing the funds directly to Plaintiffs.

Plaintiffs were granted an *ex parte* temporary injunction by the state court on June 12, 2013, which prohibited Defendants from disbursing settlement checks directly to Plaintiffs' clients without first satisfying Plaintiffs' charging lien "until further Order of this [c]ourt." (Temporary Injunction Without Notice 10 [ECF No. 1-3]). The Federal Defendants removed the case on June 13, 2013 pursuant to 28 U.S.C. section 1442(a)(1) as the Federal Defendants are agencies of the United States (*see* Notice of Removal [ECF No. 1]), and by operation of law the temporary injunction expired fourteen days later — on June 27, 2013, *see* Fed. R. Civ. P.

3

65(b)(2); *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers, Local No. 70*, 415 U.S. 423, 439–40 (1974). Defendants now seek dismissal of the Complaint, primarily arguing the Court lacks subject matter jurisdiction.

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). It is presumed that a federal court lacks jurisdiction in a particular case until the plaintiff demonstrates the court has jurisdiction over the subject matter. *See id.* (citing *Turner v. Bank of No. Am.*, 4 U.S. 8, 11 (1799); *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 182 (1936) ("It is incumbent upon the plaintiff properly to allege the jurisdictional facts . . . .")). A district court may inquire into the basis of its subject matter jurisdiction at any stage of the proceedings. *See* FED. R. CIV. P. 13(h)(3) ("If the court determines at any time that it lacks subject–matter jurisdiction, the court must dismiss the action."); Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 3522 (3d ed. 2007)

Attacks on subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure may be either facial or factual. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). Like a Rule 12(b)(6) motion, "[a] 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the complaint are taken as true . . . ." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Factual attacks differ because they "challenge[] the existence of subject matter jurisdiction in fact . . . and matters outside of the pleadings, such as testimony and affidavits, are considered." *Id*. Factual attacks also differ from facial attacks

CASE NO. 13-22119-CIV-ALTONAGA/Simonton

because "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen*, 549 F.2d at 891. The Motion presents a factual attack on the Court's jurisdiction.

### III. ANALYSIS

The Federal Defendants are authorized to order certain banking organizations to cease and desist from engaging in unsafe or unsound practices or violations of law, and also to take "affirmative action" to correct the conditions resulting from any such practices or violations. 12 U.S.C. § 1818(b)(1). The affirmative action authorized under the statute is broad and includes restitution and reimbursement. *See id.* § 1818(b)(6)(A). Orders issued pursuant to section 1818(b) may be issued on the consent of the respondent banking institution, *see id.* § 1818(b)(2), as in the case of the Consent Orders and Amendments.

Defendants insist Congress, by enacting 12 U.S.C. section 1818(i)(1), has withdrawn the Court's jurisdiction to grant the relief Plaintiffs seek. (*See* Mot. 12–15). In pertinent part, 12 U.S.C. section 1818(i)(1) provides: "except *as otherwise provided in this section* or under section 1831*o* or 1831p-1 of this title no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under any such section, or to review, modify, suspend, terminate, or set aside any such notice or order." 12 U.S.C. § 1818(i)(1) (emphasis in original). Defendants assert the bar is triggered as the relief Plaintiffs seek would necessarily "affect" the enforcement of and "modify" the terms of the Consent Orders and Amendments as all of them require payment of funds directly to Eligible Borrowers — not payment to the

5

CASE NO. 13-22119-CIV-ALTONAGA/Simonton

Eligible Borrowers' attorneys.[4] (Mot. 15). Thus, under Defendants' reasoning, section 1818(i)(1) divests the Court of jurisdiction.

As an initial matter, Plaintiffs contend section 1818(i)(1) does not apply here because the Consent Orders and Amendments were issued pursuant to 12 U.S.C. section 1818(b), not 12 U.S.C. sections 1831o or 1831p-1. (*See* Supp. Resp. ¶¶ 4–7 [ECF No. 25-1]). This argument fails for it is based upon an incorrect reading of section 1818(i)(1). Plainly under section 1818(i)(1), courts are divested of jurisdiction to affect the enforcement or modify any order issued "under any such section," which includes the whole of section 1818. As the Consent Orders and Amendments were issued under a subsection of section 1818, the jurisdictional bar of section 1818(i)(1) applies unless the relief Plaintiffs seek neither modifies the terms of, nor affects the enforcement of the Consent Orders and Amendments.

On this issue, Plaintiffs assert the relief they seek does neither. In support, Plaintiffs contend they "do not attempt to redirect or change the intent behind the consent orders that set[] forth distribution to the [Eligible Borrowers], only where the payments are to be mailed." (Supp. Resp. ¶ 17 [ECF No. 25-1]). Additionally, they state "it is the request of the borrowers that the monies be forwarded to their legal representatives." (*Id.* ¶ 16). As a result, according to Plaintiffs, the relief sought here cannot affect the enforcement of, or modify the terms of the Consent Orders and Amendments. These arguments fail to persuade.

The relief Plaintiffs seek certainly would affect the enforcement of, and modify the terms of the Consent Orders and the Amendments. Under the terms of the BOA Consent Order, the bank was required to submit a "plan, acceptable to the OCC, to remediate all financial injury to

---

[4] The Federal Defendants do not argue, and the Court does not address, whether the procedures established by the Amendments would necessarily foreclose Plaintiffs' claims as Plaintiffs assisted their clients in seeking review of files under the IFR procedures, which have been superseded by the Amendments.

borrowers . . . by: (a) reimbursing or otherwise appropriately remediating borrowers" for the mortgage servicers misdeeds. (BOA Consent Order VII.5). Under the BOA Amendment, the bank was required to make a substantial cash payment into the QSF, from which payments to Eligible Borrowers would "be made pursuant to a distribution plan developed by the OCC and the Board . . . in their discretion." (BOA Amendment I.1). The other Consent Orders and Amendments include similar language. (*See, e.g.*, SunTrust Consent Order 3(c) (requiring submission of a plan to "reimburse or otherwise provide appropriate remediation to the borrower for any impermissible or otherwise unreasonable penalties, fees or expenses, or for other financial injury . . . ."); SunTrust Amendment 3(a) ("payments [from the QSF] will be made pursuant to a distribution plan developed by the Board of Governors and the Office of the Comptroller of the Currency . . . in their discretion to borrowers . . . .")).

These provisions contemplate reimbursements being made to the Eligible Borrowers alone. Moreover, the Amendments leave the distribution of payments made from the QSF to the discretion of the Federal Defendants. This discretion is not limited but rather allows the Federal Defendants to develop a plan whereby they would send settlement payments from the QSF directly to Eligible Borrowers. This is precisely what the Federal Defendants have done. As a result, should the Court require Rust to pay Plaintiffs directly instead of the Eligible Borrowers, it would affect the enforcement of, and modify the terms of the Consent Orders and Amendments by stamping out the Federal Defendants' discretion to timely disburse funds to borrowers in accordance with the Federal Defendants' plan. The Court plainly lacks jurisdiction to make such modifications. *See* 12 U.S.C. § 1818(i)(1); *cf. Ridder v. Office of Thrift Supervision*, 146 F.3d 1035, 1038–40 (D.C. Cir. 1998) (affirming section 1818(i)(1) precluded jurisdiction to grant relief to former bank officers who brought an action to enjoin the enforcement of a temporary

CASE NO. 13-22119-CIV-ALTONAGA/Simonton

cease and desist order preventing the bank holding company from paying the officers' legal expenses); *Spiegel Holdings, Inc. v. Office of Comptroller of Currency of U.S.*, No. Civ. 03-335-KI, 2003 WL 21087707, at *2 (D. Or. Apr. 28, 2003).

To the extent Plaintiffs assert the Court retains jurisdiction under *Leedom v. Kyne*, 358 U.S. 184 (1958), such argument fails to persuade. The totality of Plaintiffs' argument on this point is the following: "courts may review agency action, even when Congress intended otherwise, if a plaintiff makes a 'strong and clear' showing that the agency has acted contrary to its statutory authority or deprived the plaintiff of constitutional rights." (Supp. Resp. ¶ 19 (quoting *McCulloch v. Libbey-Owens-Ford Glass Co.*, 403 F.2d 916, 917 (D.C. Cir. 1968))). Even assuming this principle applies here, Plaintiffs fail to make any showing — much less a strong and clear showing — that Defendants are acting contrary to statutory authority or that they are depriving Plaintiffs of constitutional rights.[5]

## IV. CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 11]** is **GRANTED**. The Verified Emergency Petition for Temporary Injunction without Notice and for Declaratory Judgment **[ECF No. 1-2]** is **DISMISSED**. The Clerk of Court is directed to mark this case as **CLOSED**.

---

[5] Defendants raise two additional arguments — that Plaintiffs do not have a legally cognizable charging lien and Plaintiffs have wholly failed to establish they are entitled to injunctive relief, the first of two claims for relief stated in the Complaint. (*See* Mot. 16–21). As the Court lacks jurisdiction over Plaintiffs' claims, the Court does not address these additional arguments except to note the following. Showing irreparable injury is the "*sine qua non* of injunctive relief." *Ne. Fl. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (citation omitted). An injury is irreparable only where it "cannot be undone through monetary remedies." *Id.* Plaintiffs fail to point to any non-monetary damages they may suffer as a result of the settlement funds being disbursed directly to their clients.

CASE NO. 13-22119-CIV-ALTONAGA/Simonton

**DONE AND ORDERED** in Chambers at Miami, Florida, this 12th day of July, 2013.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record